IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DIANNE JO ETTA CLINE,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C10-0136

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   *Cline's Education and Employment Background* . . . . . . . . . . . . 5
     B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 5
          1.   *Cline's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . 5
          2.   *Vocational Expert Testimony* . . . . . . . . . . . . . . . . . . . 6
     C.   *Cline's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 10
     B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 12
          1.   *Credibility Determination* . . . . . . . . . . . . . . . . . . . 12
          2.   *Dr. McCune's Opinions* . . . . . . . . . . . . . . . . . . . . . 16

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 2) filed by Plaintiff Dianne Jo Etta Cline on October 29, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Cline asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Cline requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On April 4, 2008, Cline applied for disability insurance benefits. In her application, Cline alleged an inability to work since August 31, 2006 due to arthritis, fibromyalgia, and diabetes. Cline's application was denied on May 29, 2008. On July 23, 2008, her application was denied on reconsideration. On September 17, 2008, Cline requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 22, 2009, Cline appeared personally, and with her attorney before ALJ John E. Sandbothe for an administrative hearing. Cline and vocational expert Melinda Stahr testified at the hearing. In a decision dated January 8, 2010, the ALJ denied Cline's claim. The ALJ determined that Cline was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Cline appealed the ALJ's decision. On August 27, 2010, the Appeals Council denied Cline's request for review. Consequently, the ALJ's January 8, 2010 decision was adopted as the Commissioner's final decision.

On October 29, 2010, Cline filed this action for judicial review. The Commissioner filed an answer on January 4, 2011. On February 24, 2011, Cline filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform other work that exists in significant numbers in the national economy. On April 25, 2011, the Commissioner filed a responsive brief arguing the

ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 5, 2011, Cline filed a reply brief. On January 3, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Cline's Education and Employment Background

Cline was born in 1963. She is a high school graduate. Cline also studied two years in college. The record contains a detailed earnings report for Cline. The report covers Cline's employment history from 1989 to 2009. Between 1989 and 2008, Cline earned between $351.78 (1990) and $29,414.15 (1999). She had no earnings in 1991, 2005, and 2009.

### B. Administrative Hearing Testimony

#### 1. Cline's Testimony

At the administrative hearing, Cline's attorney asked Cline to describe her difficulties with fibromyalgia. Cline explained that she has muscle pain at various places on her body, particularly in her legs, back, and neck. Specifically, Cline stated:

> With the fibromyalgia and back pain, it kind of plays on each other, and when I'm in pain, it -- I, I get tense, so the fibromyalgia sometimes moves up into my neck, into my lower back -- the muscles in my lower back, which then usually causes my hips to get sore. If I'm walking around and just sitting down, lying, taking medication is about the only think that relieves that.

(Administrative Record at 34.)

Cline's attorney also asked Cline to discuss her ability to perform full-time sedentary work:

> Q:  Well, how long do you think you could sit, in a normal eight hour work day? In a chair like you're sitting in now?
>
> A:  About an hour at a time.
>
> Q:  And then what happens?
>
> A:  I would either have to take medicine, try to walk around, unless my hips or back were hurting with the fibromyalgia.
>
> Q:  Then would you be able to go back and sit for another hour after taking a break like that?

| | |
|---|---|
| A: | Usually it -- when I start getting the pain, after I move around, my ability to sit in one place starts going down. |
| Q: | Do you think you could complete a full eight hour work day? |
| A: | Probably not. Working in a, in an office environment requires a lot of standing up, sitting down, carrying things[.] . . . |
| Q: | What would happen towards the end of the day, say around three o'clock, if you were at a sedentary job? |
| A: | Well, I was in extreme pain by then, just walking slower doing as little as I could. |

(Administrative Record at 36.)

Cline's attorney and Cline also discussed her difficulties with depression and anxiety. Cline testified that when she is depressed, she isn't "able to work." Specifically, she stated that when she is depressed she has difficulty remembering and retaining information. She also stated that she has difficulty following instructions when she is depressed.

The ALJ also questioned Cline. The ALJ inquired as to Cline's typical day. Cline stated that:

> I get up -- I try to get up at nine o'clock. I take my pills. I try to do a little housework. I try to fix myself some lunch. If I'm in a lot of pain, I'm, I'm not able to do that. My son helps me a lot around the house, just because, when I'm in pain, I, I'm not supposed to be lifting anything heavier than a loaf of bread. . . .
>
> I just basically try to do housework. If I'm in pain, I try to rest, sleep. When my husband comes home I, I try to fix supper and have it ready when he gets home.

(Administrative Record at 47.)

### 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual who:

can lift 20 pounds occasionally, 10 pounds frequently, but she
can only be on her feet two hours total during a work day.
She can only occasionally balance, stoop, crouch, kneel, crawl
or climb. She would be limited to simple routine repetitive
work, superficial contact with the public, regular pace.

(Administrative Record at 49). The vocational expert testified that under such limitations,
Cline could not perform her past relevant work. The vocational expert further testified
that Cline could perform the following work: (1) touch up screener (580 positions in Iowa
and 48,000 positions in the nation), (2) final assembler (690 positions in Iowa and 29,000
positions in the nation), and (3) charge account clerk (1,400 positions in Iowa and 212,000
positions in the nation). The ALJ asked a second hypothetical which was identical to the
first hypothetical, except that the individual would require two or more absences per
month, two or more unscheduled breaks while working, and a slow pace for much of the
workday. The vocational expert testified that under such limitations, Cline could not find
competitive employment.

### C. Cline's Medical History

On July 18, 2006, Cline was referred to Dr. Tork Harman, M.D., with complaints
of low back and right leg pain. Cline stated that her pain ranged from 3 to 10 on a
10-point scale with 10 being the most severe pain. Upon examination, Dr. Harman
diagnosed Cline with mild degenerative changes of the lumbar spine with chronic low back
and intermittent lower extremity radiculitis. Dr. Harman performed a lumbar epidural
block injection on Cline as treatment. In September 2007, Cline returned to Dr. Harman
with similar low back and right leg complaints. Dr. Harman performed another lumbar
epidural block injection on Cline as treatment. The second injection only relieved Cline's
symptoms for two weeks. In November 2007, Dr. Harman diagnosed degenerative disease
of the lumbar spine, recurrent low back pain, and intermittent right lower extremity
radiculitis. Dr. Harman recommended another lumbar epidural block injection as
treatment.

On April 23, 2008, Cline met with Dr. Cassandra S. Lange, M.D., complaining of bilateral upper extremity swelling, stiffness, and difficulty making a fist. Upon examination, Dr. Lange found soft tissue swelling in several joints. Dr. Lange referred Cline to Dr. Shahin Bagheri, M.D., for further consultation. Upon examination, Dr. Bagheri diagnosed Cline with carpal tunnel syndrome and fibromyalgia.

On May 28, 2008, Dr. Laura Griffith, D.O., reviewed Cline's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Cline. Dr. Griffith determined that Cline could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Cline could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Griffith also found that Cline was limited in her ability to reach above her left shoulder. Dr. Griffith found no visual, communicative, or environmental limitations. Dr. Griffith noted that Cline's impairments, including obesity, fibromyalgia, degenerative joint disease in her right knee, degenerative disc disease in her lumbar spine, and left shoulder impingement, were "severe." Dr. Griffith further noted, however, that:

> [Cline] reports to DDS she does light housework which includes, laundry, vacuum[ing] and cooking. She has worked temporary jobs since her [alleged onset date] with the last in 3/08. She reported significant difficulty with her personal care inconsistent with her normal joint exams. She does not drive due to a lack of a license. She walks, rides and uses a bike for transportation. She limits walking to 200 feet and lifting to 10 pounds inconsistent with her objective physical findings and ability to pursue temporary work. She reports using a walker and wheelchair which is not supported medically.

(Administrative Record at 477.)

On July 23, 2008, Dr. Jan Hunter, D.O., reviewed Cline's medical records and provided DDS with a physical RFC assessment for Cline. Dr. Hunter determined that Cline could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hunter also determined that Cline could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Hunter also found that Cline was limited in her ability to reach above her left shoulder. Dr. Hunter found no visual, communicative, or environmental limitations. Dr. Hunter concluded that:

> The evidence in file coincides with the tenderness of the joints. [Cline] is obese and does have some left shoulder problems. The medical [record] indicates [Cline] is feeling well aside from some fatigue. Therefore, [Cline] is capable as . . . outlined.

(Administrative Record at 497.)

On July 1, 2009, Dr. Philip E. McCune, D.O., one of Cline's treating physicians, provided the Social Security Administration with a medical opinion assessment for Cline. Dr. McCune noted that Cline met the American Rheumatological criteria for fibromyalgia. Dr. McCune described Cline's symptoms as follows: multiple tender points, nonrestorative sleep, morning stiffness, muscle weakness, frequent and severe headaches, vestibular dysfunction, temporomandibular joint dysfunction, anxiety, panic attacks, depression, and chronic fatigue syndrome. Dr. McCune noted that Cline had bilateral pain in her spine, chest, shoulders, arms, hands, fingers, hips, legs, knees, ankles, and feet. Dr. McCune opined that Cline needed a job that would allow her to shift positions from sitting, standing, or walking at will. Dr. McCune further opined that Cline could occasionally lift 10 pounds or less, but could never lift 20 pounds or more. Dr. McCune also found that Cline should never stoop or crouch during an eight-hour workday.

On July 2, 2009, Cline met with Dr. Ellie Snavely, Ph.D., for a neuropsychological evaluation. Specifically, Cline was referred to Dr. Snavely to determine whether she suffered from a memory disorder. According to Cline, since a motor vehicle accident in 1989, she had experienced a "decrease in short term memory" which had "become noticeably worse during the last couple of years."[1] Cline further reported that she had difficulty completing sentences, reversed word order when talking and reading, and repeated herself in conversation. Upon examination, Dr. Snavely opined that:

> Overall assessment results suggest diffuse acquired cognitive deficits, sometimes in an erratic and inconsistent manner, but in a pattern that is atypical for any of the cognitive disorders referable to CNS dysfunction such as dementia. A diagnosis of cognitive disorder not otherwise specified would be suggested.

(Administrative Record at 602.) Dr. Snavely also diagnosed Cline with severe major depressive disorder and moderately severe generalized anxiety order. Dr. Snavely opined that the "cognitive deficits described above are likely to be referable to this combination of depression and anxiety, which are certainly at a level that is prominent enough for that to be the case."[2] Dr. Snavely concluded that there was no need to "adjust" Cline's activities of daily living through "compensatory strategies." However, Dr. Snavely emphasized that Cline needed to take her medications as scheduled.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Cline is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

---

[1] *See* Administrative Record at 599.

[2] *Id*. at 602.

(1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963,

971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007));
20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Cline had not engaged in substantial gainful activity since August 31, 2006. At the second step, the ALJ concluded from the medical evidence that Cline had the following severe combination of impairments: fibromyalgia, degenerative disc disease, obesity, diabetes mellitus, sleep apnea, depression, and a history of alcohol abuse. At the third step, the ALJ found that Cline did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Cline's RFC as follows:

> [Cline] has the residual functional capacity to perform light work . . . involving lifting 20 pounds occasionally and 10 pounds frequently; stand/walk a total of 2 hours in an 8 hour workday; occasionally balance, stoop, crouch, kneel, crawl, or climb; limited to simple, routine, repetitive work with superficial contact with the general public and no more than a regular pace.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Cline could not perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Cline could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Cline was not disabled.

### B. Objections Raised By Claimant

Cline argues that the ALJ erred in two respects. First, Cline argues that the ALJ failed to properly evaluate her subjective allegations of disability. Second, Cline argues that the ALJ failed to properly weigh the opinions of her treating physician, Dr. McCune.

### 1. Credibility Determination

Cline argues that the ALJ failed to properly evaluate her subjective allegations of disability. Cline maintains that the ALJ's credibility determination is not supported by

substantial evidence. The Commissioner argues that the ALJ properly considered Cline's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express

credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ determined that:

> [Cline's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Cline's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. At one point or another in the record, either in forms completed in connection with the application, in medical records or other statements, [Cline] reported activities of daily living including light housework, laundry, washing dishes, vacuuming, preparing simple meals, occasionally caring for her three year old grandson, caring for pets (2 dogs and 2 cats) including bathing dogs every other week, watching television, visiting with family and friends, and reading. These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Initially, [Cline] indicated she did not have a driver's license, but walked, rode a bike or used public transportation; however, at the hearing she testified she is able to drive around town and drove to the hearing as her husband was unable to drive due to an eye condition. [Cline] also reported assisting her father in paying bills, cutting his hair,

and going to doctor appointments with him. Although [Cline] has received various forms of treatment for the allegedly disabling symptoms, which normally weigh somewhat in [her] favor, the record also reveals that the treatment has been generally successful in controlling those symptoms and has been essentially routine and/or conservative in nature. [Cline] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [her] favor, but the medical records reveal that the medications have been relatively effective in controlling [Cline's] symptoms when taken as prescribed. The record indicated times [Cline] has failed to follow recommendations such as eating regular meals and taking insulin. [Cline] alleged symptoms increased after a motor vehicle accident in 1989; however[,] she continued to work off and on and has had several work attempts since the alleged onset date. While these work attempts may not represent work at the substantial gainful activity level, the work activity is an indication of involvement in a range of daily activity not consistent with disability from all work. . . . [Cline] admitted to certain abilities that provide support for part of the residual functional capacity conclusion and decision. Therefore, the undersigned finds [Cline] has been less than fully credible regarding her allegation of total disability. . . .

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment records to [*sic*] not support [Cline's] allegations of incapacitating and debilitating symptoms. The credibility of [Cline's] allegations is further weakened by her own report of rather extensive daily activities.

(Administrative Record at 18-19.)

It is clear from the ALJ's decision that he considered and discussed Cline's treatment history, medical history, functional restrictions, effectiveness and side effects of medications, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Cline's subjective allegations of disability

were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Cline's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. McCune's Opinions*

Cline argues that the ALJ failed to give good reasons for discounting the opinions of Dr. McCune. Specifically, Cline argues that the ALJ should have given Dr. McCune's opinions controlling weight, and thereby, found her to be disabled. Cline requests that this matter be reversed and remanded for calculation of benefits or for further consideration of Dr. McCune's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

The ALJ's decision provides a detailed summary of the opinions expressed by Dr. McCune.[3] In discussing Dr. McCune's opinions, the ALJ gave "some" weight to them due to "the treating history, clinical findings, and reasoned bases for his opinions."[4] The ALJ did not give controlling weight to Dr. McCune's opinions, however, because

---

[3] *See* Administrative Record at 17-18.

[4] *Id.* at 19.

Dr. McCune's opinions were based in part on Cline's own "subjective complaints in regards to functional abilities."[5] Thus, because the ALJ found Cline to be "less than fully credible regarding her allegation of total disability" and found the "[t]reatment records to [*sic*] not support [Cline's] allegations of incapacitating and debilitating symptoms," the ALJ declined to give Dr. McCune's opinions controlling weight.[6]

Having reviewed the entire record, the Court finds that the ALJ properly considered the opinion evidence provided by Dr. McCune. While it is arguable that the ALJ's decision could have contained more detailed reasoning explaining his determination regarding the weight given to Dr. McCune's opinions, nonetheless, the Court finds that the ALJ fully and fairly developed the record with regard to Dr. McCune's opinions. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."). Failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ. *Id.* (citing *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)). Because the ALJ properly considered Dr. McCune's opinions, the Court concludes that Cline's argument on this issue, is without merit. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly determined Cline's credibility with regard to her subjective complaints of disability. The Court also finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. McCune. Accordingly, the

---

[5] *Id.*

[6] *See* Administrative Record at 19.

Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.  The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.  Plaintiff's Complaint (docket number 2) is **DISMISSED** with prejudice; and

3.  The Clerk of Court is directed to enter judgment accordingly.

DATED this ___9ᵗʰ___ day of August, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA